BAKER BOTTS LLP

30 ROCKEFELLER PLAZA
NEW YORK, NEW YORK
10112-4498

TEL +1 212.408.2500
FAX +1 212.408.2501
bakerbotts.com

AUSTIN
BRUSSELS
DALLAS
DUBAI
HOUSTON
LONDON
NEW YORK
PALO ALTO
RIYADH
SAN FRANCISCO
SINGAPORE
WASHINGTON

November 2, 2026

Vernon Cassin
TEL +1 202 639 1139
vernon.cassin@bakerbotts.com

**VIA CM/ECF**
The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square, Courtroom 1305
New York, NY 10007

Re: *JBA Asset Management LLC v. RoboStrategy, Inc.*
Case No. 1:26-cv-08943 (PAE)(RFT)

Dear Judge Engelmayer:

We represent Defendant RoboStrategy, Inc. and write to request a stay of discovery pending resolution of RoboStrategy's forthcoming motion to dismiss Plaintiff JBA Asset Management LLC's complaint. Pursuant to Your Honor's October 15, 2026 Order (ECF No. 10), that motion will be fully briefed by January 15, 2027. The parties conferred regarding this letter motion to stay by videoconference on October 23, 2026. JBA opposes RoboStrategy's stay request.

This matter concerns JBA's effort, as a potential investor in RoboStrategy, to enforce a $10 million break-up fee in a term sheet (ECF No. 1-1, Ex. A, the "Term Sheet"), which did not bind the parties to consummate a financing transaction. That $10 million fee is 20 percent of the contemplated financing of $50 million. It is manifestly disproportionate to any damages that could flow from a breach of exclusivity.[1] As such, it is an unenforceable penalty—and demonstrably so even at the pleadings stage. JBA tries to plead around this problem by describing the "Liquidated Damages" (defined this way in the Term Sheet) as not damages for breach at all, but instead as a "contractual option to seek capital from alternative sources." ECF No. 1-1 (the "Complaint") ¶ 5. But that theory fails when considering the plain text of the Term Sheet and the deal it embodies, and it too should be dismissed under Rule 12(b)(6). RoboStrategy respectfully seeks the Court's intervention to prevent unnecessary discovery costs while JBA pursues a windfall that New York law does not allow.

Under Federal Rule of Civil Procedure 26(c), courts have "considerable discretion" to stay discovery for good cause, considering "(1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, (2) the breadth of discovery and the burden of responding to

---

[1] For perspective, the operative Term Sheet was executed on June 17, 2026, and JBA filed for suit just 85 days later. A 20% return in 85 days, on an annualized basis, would be roughly an 86% return per annum. That is particularly striking given that JBA never invested a dime with RoboStrategy and that its costs of diligence were separately funded through a $150,000 payment by RoboStrategy. JBA does not even attempt to make a demand for its direct damages, which would be much lower than the $10 million penalty it seeks.

it, and (3) the risk of unfair prejudice to the party opposing the stay." *Gastineau v. ESPN Inc.*, No. 25 Civ. 2041 (PAE), 2025 WL 2733155, at *1 (S.D.N.Y. Sept. 24, 2025) (citations omitted).

***First, substantial grounds support dismissal of JBA's entire complaint.*** JBA's complaint advances two theories: (1) the Liquidated Damages are not damages for breach but instead one of two alternative performance options belonging to RoboStrategy, or alternatively (2) if the Liquidated Damages are indeed *liquidated damages* (for breach), they are enforceable as a reasonable estimate of the harm to JBA if RoboStrategy breached the exclusivity provision. Both theories fail as a matter of law, based only on the allegations of the complaint and the text of the Term Sheet. JBA brings no other claim and seeks no alternative recovery.

JBA's first theory fails because both the text of the Term Sheet and the nature of the deal make plain that the Liquidated Damages are just what the Term Sheet chose to call them: "damages" for breach. The plain language of the Term Sheet shows that the parties intended the Liquidated Damages provision to be a "remedy" for a breach of exclusivity, not an alternative performance contract. Term Sheet at 4–5 (identifying the $10 million fee as "Liquidated Damages"; discussing the "actual damages [JBA] would suffer in the circumstances described above [i.e., breach of exclusivity]"; referring to the Liquidated Damages as the "sole and exclusive monetary *remedy*"; and reserving "*other equitable remedies in addition* to the Liquidated Damages") (emphases added). JBA's primary argument to the contrary is that in a prior term sheet that the parties executed for the same potential financing, the exclusivity term stated that RoboStrategy "shall not" solicit or enter into alternative financing, while the operative Term Sheet provides that "if" RoboStrategy solicits or enters into alternative financing, "then [RoboStrategy] shall remit to [JBA] a cash fee . . . (the 'Liquidated Damages')." Compl. ¶ 13; Term Sheet at 4. But that extrinsic evidence is irrelevant where the Term Sheet's own text leaves no doubt that the parties intended the Liquidated Damages as a "remedy" for breach. *See Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467–68 (2d Cir. 2010).

And even if the text alone suggested alternative performance, New York law would not allow the parties to paper over what is, at bottom, a penalty. *Hasbrouck v. Van Winkle*, 27 N.Y.S.2d 72, 75 (3d Dep't 1941) ("[A] contract which is alternative in form cannot be used as a cloak for the enforcement of a penalty."). Judge Liman considered precisely this situation last month in *Ayrton Capital v. Bitdeer*, concluding: "Bitdeer could either perform and honor exclusivity and [the investor] Ayrton would consider the transaction—or Bitdeer could opt not to perform, dishonor exclusivity, and gain nothing. In these circumstances, the 'option' to not perform can only be considered what the Term Sheet called it: a breach." *Ayrton Capital LLC v. Bitdeer Technologies Group*, No. 24-CV-5160 (LJL), 2026 WL 2942577, at *16 (S.D.N.Y. Sept. 30, 2026). It is the same here, where RoboStrategy "opting" to dishonor exclusivity would end JBA's obligation to consider the transaction, and yield RoboStrategy nothing of value from JBA at a cost of $10 million. *See id.* ("The relative value between those two options would have been so disproportionate as to be plainly unequal.").

JBA's second theory—that the Liquidated Damages are not a penalty—can also be dismissed at the pleadings stage. *See Am. E Grp. LLC v. Livewire Ergogenics Inc.*, No. 1:18-CV-3969-GHW, 2020 WL 469312, at *11 (S.D.N.Y. Jan. 28, 2020), *aff'd*, No. 21-1891-CV, 2022 WL 2236947 (2d Cir. June 22, 2022) (finding liquidated damages provision unenforceable on motion to dismiss). At 20% of the proposed financing, the Liquidated Damages here are an order of

magnitude higher than those courts have upheld for similar exclusivity provisions. *RDF Agent, LLC v. Electric Red Ventures, LLC*, 227 A.D.3d 424, 427–28 (1st Dep't 2024) (1% fee for breach of exclusivity not a penalty); *FCS Advisors, Inc. v. Fair Finance Co., Inc.*, 378 F. App'x 65, 68 (2d Cir. 2010) (2% break-up fee for breach of exclusivity not a penalty) (citing *JMD Holding Corp. v. Congress Fin. Corp.*, 4 N.Y.3d 373, 382–83 (2005)). And the Term Sheet here bears the hallmark of many unenforceable penalties, as it "specif[ies] the same damages regardless of the severity of the breach." *Ayrton*, 2026 WL 2942577, at *19–21 (quoting *XCO Int'l Inc. v. Pac. Sci. Co.*, 369 F.3d 998, 1004 (7th Cir. 2004)). The same $10 million fee applies whether the triggering event occurs on the first or last day of the exclusivity period, even though JBA's potential losses would vary depending on how long it reserved its capital or used its resources to explore a deal. And JBA gives away the unenforceability by asserting that the parties "understood the rationale" for the Liquidated Damages as "reflect[ing] a reasonable estimate of JBAAM's projected profits had the contemplated financing moved forward." Compl. ¶ 17. Those are precisely the sort of "expectation damages" in the contemplated future agreement that New York law does not allow JBA to recover, and which therefore cannot approximate its actual damages for breach of exclusivity. *See Ayrton*, 2026 WL 2942577, at *19 (observing party is "not entitled to expectation damages representing the loss from a transaction it never had a contractual right to consummate") (citing *Goodstein Constr. Corp. v. City of New York*, 80 N.Y.2d 366, 373–75 (1992)); *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 70 (2d Cir. 2004) (liquidated damages provision unenforceable as penalty if it is "plainly disproportionate to the possible loss").

***Second, any discovery would be burdensome in light of the high likelihood of dismissal.*** Though JBA has not served discovery requests, RoboStrategy expects that JBA would seek at least several employees' communications. Costly collection and review of RoboStrategy email is altogether avoidable here given the likelihood that the case will be dismissed under *Ayrton* and similar cases. A stay of discovery would also avoid burdening JBA, its affiliates, and third parties with discovery into whether $10 million is a fair approximation of actual damages (e.g., proof of JBA's typical or expected costs to explore a transaction and its practices with respect to sourcing and reserving capital). A stay would save these nonparties the burden and expense of discovery RoboStrategy would likely need to seek from them on this point. While "[n]ormal discovery in a limited matter does not alone rise to the level of good cause" for a stay, *Giuffre v. Maxwell*, No. 15 CIV. 7433 (RWS), 2016 WL 254932, at *2 (S.D.N.Y. Jan. 20, 2016), this Court has recognized that a stay may nonetheless be warranted where defendants present "substantial arguments" for dismissal and plaintiffs face no prejudice, "despite discovery not being burdensome." *Gastineau*, 2025 WL 2733155, at *2 (citing *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002)).

***Third, JBA will suffer no unfair prejudice from a stay.*** There is no real risk that potentially relevant documents will be lost or that witnesses will become unavailable or unable to accurately testify owing to the reasonable stay period that RoboStrategy is seeking. JBA can point to no concrete prejudice to its claims apart from the simple fact of delay. *See Druckman v. Morgenstern*, No. 26 CIV. 993 (PAE), 2026 WL 791896, at *2 (S.D.N.Y. Mar. 20, 2026) (recognizing that the mere passage of time does not establish prejudice sufficient to defeat a stay).

RoboStrategy respectfully requests that the Court stay discovery pending resolution of its motion to dismiss. We thank the Court for its consideration.

Respectfully submitted,

*/s/ Vern Cassin*
Vern Cassin

Cc: Plaintiff's counsel via ECF

Consistent with the Court's Individual Rule 2(E), plaintiff's response to this letter is due November 6, 2026.

SO ORDERED.

Paul A. Engelmayer

Date: November 3, 2026
New York, New York

PAUL A. ENGELMAYER
United States District Judge